| | | |
|---|---|---|
| PHILLIP E. BOYNTON, CLARENCE W. BOYNTON, NORMA ANN LOGAN, RENELDA J. WESTFALL, SHANNON NONN, AARON SCOTT BERNARD, ALAN F. BERNARD, LINDA R. BERNARD, and DAVID ALAN BERNARD, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | 02-1111-JPM |
| vs. | ) ) | |
| HEADWATERS, INC., | ) ) | |
| Defendant. | ) | |

## ORDER GRANTING MOTION TO CERTIFY CLASS PURSUANT TO RULE 23

Pending before the Court is Plaintiffs' renewed Motion to Certify Class (Docs. 435 & 436, originally filed Sept. 26, 2005) and supporting memoranda (Docs. 523, 553, 559, and 567). Defendant Headwaters, Inc. ("Headwaters") responded in opposition to the original motion (Doc. 458) and the supplemental memoranda (Docs. 531, 552, 561, and 571). The Court held hearings in this matter on March 12, 2008, and May 19, 2008. For the foregoing reasons, the Court GRANTS Plaintiffs' Motion to Certify Class pursuant to Federal Rule of Civil Procedure 23.

**I. BACKGROUND**

    **A. Factual History**

Plaintiffs bring a civil conspiracy action on behalf of a putative class of investors. According to the Amended Complaint, at some time in the late 1980s Plaintiffs invested in Adtech, Inc. of Illinois ("Adtech"), an Illinois corporation formed on November 23, 1987, to develop and commercialize coal agglomeration technology. (Am. Compl. ¶ 8.) Coal agglomeration combines small particles of coal, rock, and other materials, removing undesirable impurities and reducing raw coal to a more usable state. (Am. Compl. ¶ 10.) James G. Davidson, a former Defendant in this case, oversaw Adtech's operations, including the development of the agglomeration process eventually patented as U.S. Patent No. 5,238,629 ("the '629 Patent"). (Am. Compl. ¶ 15.)

Davidson filed his application for the '629 Patent on August 9, 1991, along with an assignment to Adtech of his interest in the '629 Patent. (Patent Application Transmittal Letter (Doc. 80 at 35-37).) Davidson received $10,000 and Adtech stock, which was issued to members of Davidson's family, in consideration for the assignment. (Am. Compl. ¶ 16; see also Pls.' Shareholder List (Doc. 80 at 30-33); Def.'s Shareholder List (Doc. 15 at 36-42).)

Listing Davidson as "Inventor" and Adtech as "Assignee,"
the United States Trademark and Patent Office issued the
'629 Patent on August 24, 1993. ('629 Patent (Doc. 80 at
40).)

On April 1, 1991, four months before Davidson filed
his patent application, Illinois's Secretary of State
administratively dissolved Adtech for failure to file an
annual report. (Certificate of Dissolution (Doc. 15 at 43-
44).) As a result of the dissolution, the assignment of
the '629 Patent to Adtech failed to effect a transfer of
rights. See Adtech v. Davidson, Case No. 00-1244, Order
Granting Defendants' Motions to Dismiss at 2-3 (W.D. Tenn.
Aug. 8, 2001). Davidson failed to inform Plaintiffs of the
dissolution and continued to operate Adtech as if it had
not been dissolved for more than seven years. (Am. Compl.
¶ 18; see also Oct. 27, 1993, Letter from the President
(Doc. 136 at 17-18); Aug. 1, 1994, Notice of Stockholder
Meeting Date Change (Doc. 136 at 19); May 25, 1999,
Davidson Report to Shareholders (Doc. 136 at 20); Davidson
Settlement Agreement ¶ 2.A.) The dissolved Adtech's
ongoing business transactions included the grant of a
license in the '629 Patent to Carbontec Energy Corporation
("the Carbontec license") on July 18, 1996, and the receipt
of royalties from that license. (Carbontec License

Agreement (Doc. 136 at 35); Hoover Dep. (Doc. 540-29) at 51.)

In 1998, Davidson began arrangements to transfer his rights in various patents, including the '629 Patent, to Headwaters.[1]  (See Mutual Non-Disclosure Agreement (Doc. 136 at 25).)  During these discussions, Davidson disclosed Adtech's dissolution to Headwaters and its counsel, who subsequently investigated Adtech's corporate status and confirmed its dissolution.  (Davidson Settlement Agreement ¶ 2.F; Investigation Summary (Doc. 238, Ex. 18) at 7 ("Each of the patents is assigned to a business that is no longer in operation – could this be because he is putting an asset into a company and raising money then pulling the plug[?]").)

On May 14, 1998, a second Adtech, Inc. of Illinois ("the second Adtech") was formed.[2]  (Articles of Incorporation (Doc. 540-12).)  The second Adtech had a single shareholder, the Macrotech Corporation, which was in turn controlled by Davidson.  (Hoover Dep. 54, 55.)  On October 21, 1998, the second Adtech transferred its purported rights in the '629 Patent to Davidson.  (Davidson

---

[1] In 1998, Headwaters operated as Covol Technologies, Inc.
[2] Illinois law permanently precludes reinstatement of an administratively dissolved company five years after the administrative dissolution.  See 805 Ill. Comp. Stat. 5/12-80 (2001).  Therefore, Illinois law prevented Adtech's reinstatement after April 1, 1996, and the 1998 incorporation created a new and separate entity.

Patent Purchase Agreement (Doc. 540-17).)  On the same day Davidson and Headwaters executed a Patent Purchase Agreement, transferring all of Davidson's rights in the '629 Patent.  (Headwater's Patent Purchase Agreement (Doc. 136 at 31).)  Counsel for Headwaters prepared both patent purchase agreements.  (Davidson Settlement Agreement ¶ 2.F.)  On November 10, 1998, Davidson executed an agreement on behalf of the second Adtech transferring rights in the Carbontec License to Headwaters.  (Contract Interest in Patent Purchase Agreement (Doc. 540-19).)

Davidson did not inform, much less seek the approval of, the Adtech shareholders before executing the patent purchase agreements.  (Davidson Settlement Agreement ¶ 2.G.)  Although the patent purchase agreement between Davidson and the second Adtech contained a provision for payment of $130,000, Davidson characterized his consideration for the '629 Patent as debt forgiveness.  (May 25, 1999, Davidson Report to Shareholders.)  In exchange for the '629 Patent and Carbontec License, Headwaters issued 60,000 shares of its common stock to the second Adtech and to the Macrotech Corporation.  (Investment Agreement (Doc. 540-20).)  Davidson used the proceeds from the sale of the Macrotech Corporation's shares to pay a "federal criminal restitution," which

reduced his sentence of incarceration imposed following his pleading guilty to various federal fraud charges. (Davidson Settlement ¶ 2.H; Hoover Dep. 99-101.)  On May 5, 1999, in a report to Adtech's shareholders, Davidson disclosed details of the patent purchase agreements with Headwaters.  (May 25, 1999, Davidson Report to Shareholders.)  Davidson disclosed Adtech's administrative dissolution to its shareholders in his letter of resignation on November 23, 1999.  (Nov. 23, 1999, Davidson Letter to Shareholders (Doc. 540-26).)

On March 24, 2000, the second Adtech held a "special meeting of the board of directors."  (Special Meeting Minutes (Doc. 458, Ex. 9)).  In attendance were Tom Patton, Robert Hastie, Mark Hastie, Graydon Hoover, Bob Austin, Jerry Turner, and Robert Wilson.  (Id. at 1.)  Lowell Tison was absent.  (Id.)  At the meeting, these directors unanimously elected officers and ratified the patent purchase agreements with Headwaters "as the act[s] and deed[s] of the Corporation."  (Id.)  The directors, including Lowell Tison and Donald Hastie, met again on July 7, 2000, and discussed, among other things, "whether or not Phil Boynton had ever paid the initial capital contribution of $200.00 for the shares of stock in Adtech."  (Board Meeting Minutes (Doc. 458, Ex. 15).)  Though the record is

unclear as to when the second Adtech issued additional shares, Marilyn Davidson, Donald Hastie, Mark Hastie, Bonnie Hastie, Robert Hastie, Bowden Enterprises, Inc., Jerry Turner, Robert Wilson, and Tom Patton's estate each received dividend payments as its shareholders. (Stockholder & Dividend Information (Doc. 458, Ex. 10)).

**B. Procedural Posture**

On August 21, 2000, three of the named plaintiffs in this action filed suit on behalf of Adtech against Davidson and Headwaters alleging an unlawful sale of the '629 Patent without corporate authorization. Adtech, Inc. of Ill. v. Davidson, Case No. 00-1244 (W.D. Tenn. 2000). On August 28, 2001, the Honorable James D. Todd dismissed the action for lack of subject matter jurisdiction, holding that Adtech never owned the '629 Patent and, consequently, lacked standing to assert ownership rights to it. Id. Order Granting Defendants' Motions to Dismiss at 2-3 (W.D. Tenn. Aug. 8, 2001).

On May 6, 2002, Plaintiffs filed the current lawsuit in their individual capacities against Headwaters, Davidson, and Davidson and Adtech's accountant, A. Graydon Hoover. In October of 2004, Plaintiffs dismissed Hoover as a result of his filing for bankruptcy. On September 26, 2005, the Court accepted Plaintiffs' settlement agreement

with Davidson and dismissed him from the action.  On
October 31, 2005, the Court granted Headwaters's motion for
summary judgment and dismissed the action.  On July 27,
2007, the Federal Circuit reversed the Court's dismissal of
Plaintiffs' civil conspiracy claims against Headwaters.
Plaintiffs now move to certify a class of putative
plaintiffs who can recover under a constructive trust
theory of relief against Headwaters for alleged acts of
civil conspiracy.

## II. Rule 23.2 Certification

Plaintiffs move first for certification of a class of
Adtech's former stockholders pursuant to Federal Rule of
Civil Procedure 23.2, which "applies to an action by or
against the members of an unincorporated association as a
class by naming certain members as representative parties.
The action may be maintained only if it appears that those
parties will fairly and adequately protect the interests of
the association and its members."  Fed. R. Civ. P. 23.2.
Many courts have interpreted Rule 23.2 as allowing
certification of a class action by an unincorporated
association without regard to the requirements for other
class actions prescribed by Rule 23(a).  See, e.g., Curley
v. Brignoli, Curley & Roberts Assocs., 915 F.2d 81, 86 n.4
(2d Cir. 1990); 7C Charles Alan Wright, Arthur R. Miller, &

Mary Kay Kane, Federal Practice and Procedure § 1861 (3d ed. 2007); but see Sembach v. McMahon College, Inc., 86 F.R.D. 188, 190 (C.D. Tex. 1980). However, the Court of Appeals for the Sixth Circuit has not addressed this question. The issue is not determinative in this case because Plaintiffs fail to meet the essential requirements of Rule 23.2 for certification.

**A. Unincorporated Association**

To succeed in their motion for certification pursuant to Rule 23.2, Plaintiffs must first show that they are members of an unincorporated association. Under Federal Rule of Procedure 17(b) the determination of what constitutes an unincorporated association is made according to the law of the forum state. See Coverdell v. Mid-South Farm Equip. Ass'n, 335 F.2d 9, 12 (6th Cir. 1964). Neither Plaintiffs nor Defendant have cited any Tennessee caselaw addressing the question of whether or not the former shareholders of an administratively dissolved corporation constitute an unincorporated association. Citing FDIC v. Tyree, 698 S.W.2d 353 (Tenn. Ct. App. 1985), and Blair v. Southern Clay Manufacturing Co., 121 S.W.2d 570 (Tenn. 1938), Defendant analyzes the formation of the alleged unincorporated association according to the rules governing partnerships in Tennessee. However, Tyree and Blair do not

stand for the proposition that all matters affecting for-profit unincorporated associations are governed by the laws of partnership; rather, they hold that for purposes of determining liability for the debts of the association, members of a for-profit entity shall be treated as if they were partners. Tyree, 698 S.W.2d at 354 ("If the association is organized for profit, the members are partners in legal effect and are liable for debts contracted in the name of the association by other members.")(quoting Blair, 121 S.W.2d at 572).

Plaintiffs argue that, because Adtech continued its business operations after its dissolution, Adtech's former shareholders automatically became members of an unincorporated association. (Pls.' Mem. (Doc. 436) at 4.) Plaintiffs assert that this unincorporated association came into being upon Adtech's dissolution and existed simultaneously with a de facto Adtech corporation, which retains legal recognition during a dissolved corporation's revival period under Illinois law. (Id.)

The United States Supreme Court has defined an unincorporated association as "a body of persons united without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise." Hecht v. Malley, 265 U.S. 144, 157

(1924)(<u>citing</u>, inter alia, <u>Allen v. Stevens</u>, 54 N.Y.S. 8

(N.Y. App. Div. 1924); BOUVIER'S LAW DICTIONARY & ENCYCLOPEDIA 269

(8th ed. 1914)); <u>see also</u> <u>Motta v. Samuel Weiser, Inc.</u>, 768

F.2d 481, 485 (1st Cir. 1985)(defining an unincorporated

association as "a body of persons acting together and using

certain methods for prosecuting a special purpose or common

enterprise"); <u>Donnelly Garment Co. v. NLRB</u>, 123 F.2d 215,

222 (8th Cir. 1941)("The individuals who form an

unincorporated association certainly should know what sort

of an organization it is, how it happened to be formed, who

influenced its formation, and who controls it."); <u>Ermert v.

Hartford Ins. Co.</u>, 559 So.2d 467, 474 (La. 1990)(explaining

that an unincorporated association "does not come into

existence or commence merely by virtue of the fortuitous

creation of a community of interest or the fact that a

number of individuals have simply acted together").  Among

the entities that Tennessee courts have recognized as

unincorporated associations are organizations of boat slip

renters,[3] education professionals,[4] insurance companies,[5]

undertakers,[6] and school districts;[7] local chapters of labor

---

[3] <u>See, e.g.</u>, <u>White v. Early</u>, 211 S.W.3d 723, 726 (Tenn. Ct. App. 2006).
[4] <u>See, e.g.</u>, <u>Esquinance v. Polk County Educ. Ass'n</u>, 195 S.W.3d 35, 38 (Tenn. Ct. App. 2005).
[5] <u>See, e.g.</u>, <u>Termninix Int'l Co. v. Tennessee Ins. Guar. Ass'n</u>, 845 S.W.2d 772, 774 (Tenn. Ct. App. 1992).
[6] <u>See, e.g.</u>, <u>Tennessee Negro Funeral Dirs. Ass'n v. Bd. of Funeral Dirs. & Embalmers</u>, 332 S.W.2d 195 (Tenn. 1960).

unions;[8] churches;[9] civic leagues;[10] golf clubs;[11] political
activists;[12] a joint railroad venture;[13] and bar
associations.[14]

The members of the putative class never sought
membership in an unincorporated association.  Plaintiffs
argue that they were associates in such an entity despite
their desire to be - and misunderstanding that they were -
shareholders in an incorporated Adtech.  However, as a
review of Tennessee and other jurisdictions' case law
reveals, voluntary and knowing membership is the hallmark
of an unincorporated association.  Accordingly, the
Adtech's former shareholders never created an
unincorporated association and, therefore, cannot be
certified as a class pursuant to Rule 23.2.

### B. Fair and Adequate Representation

Even assuming, arguendo, that the putative class did
become members of an unincorporated association upon

---

[7] See, e.g., Tennessee Small Sch. Sys. v. McWherter, 851 S.W.2d 139, 141
(Tenn. 1993).
[8] See, e.g., Dowdy v. Alexander, 51 S.W.3d 200, 201 (Tenn. Ct. App.
2000).
[9] See, e.g., Fain v. O'Connell, 909 S.W.2d 790, 791 (Tenn. 1995);
McCracken v. Brentwood United Methodist Church, 958 S.W.2d 792, 794 n.2
(Tenn. Ct. App. 1997).
[10] See, e.g., Valley Forge Civic League v. Ford, 713 S.W.2d 665 (Tenn.
Ct. App. 1986).
[11] See, e.g., Jessie v. Chattanooga Golf & Country Club, 121 S.W.2d 557
(Tenn. 1938).
[12] See, e.g., Tyree, 698 S.W.2d at 354.
[13] See, e.g., Garland v. Seaboard Coastline R.R. Co., 658 S.W.2d 528,
529 (Tenn. 1983).
[14] See, e.g., Petition for Rule of Ct. Activating, Integrating and
Unifying the State Bar of Tenn., 282 S.W.2d 782, 783 (Tenn. 1955).

Adtech's administrative dissolution, class certification pursuant to Rule 23.2 would still be inappropriate because the named Plaintiffs cannot fairly and adequately represent the interests of the entire class. The purpose underlying the requirement that class representatives fairly and adequately represent the interests of those not appearing is to afford due process protection to absent class members. See Curley, 915 F.2d at 86 (citing Hansberry v. Lee, 311 U.S. 32 (1940)(reasoning that unless the relief sought by the particular plaintiffs who bring the suit can be thought to be what would be desired by the other members of the class, it would be inequitable to recognize plaintiffs as representatives)). "When the interests of antagonistic class members are adequately represented by the class' opponents, the requirements of due process are satisfied such that a class can be certified." Id. (citing Horton v. Goose Creek Indep. Sch. Dist., 677 F.2d 471 (5th Cir. 1982); Dierks v. Thompson, 414 F.2d 453 (1st Cir. 1969); Stolz v. United Bhd. of Carpenters & Joiners, 620 F. Supp. 396 (D. Nev. 1985)).

In this case, neither Headwaters nor Plaintiffs can fairly and adequately represent the interests of a portion of the putative class, specifically those Adtech shareholders who participated in and profited from the

business affairs of the second Adtech.  The second Adtech's directors disputed the validity of named Plaintiff Phillip Boynton's Adtech shares.  Meanwhile Boynton and other named Plaintiffs dispute the validity of Marilyn and Mary Ann Davidson's Adtech shares.  (Boynton Aff. (Doc. 458, Ex. 14) at ¶ 7.)  If successful, Plaintiffs would require those members of the putative class who received second Adtech dividend payments to share their earnings.  (Boynton Dep. (Doc. 458, Ex. 2) at 186.)  These conflicts render fair and adequate representation of the proposed class by the named Plaintiffs impossible.  See Gray v. Reuther, 99 F. Supp. 992, 994 (E.D. Mich. 1951)("The strength of the faction antagonistic to the plaintiff is immaterial; its existence indicates that the identity of interest that would qualify plaintiff to represent members of the [putative class] is lacking.").

Plaintiffs contend that Headwaters can represent the interests of the dissenting members of the putative class. (Pls.' Supp. Mem. (Doc. 553-2) at 3.)  However, this is clearly not the case.  Unlike the cases cited by Plaintiffs in support of this contention,[15] the dissenting members of

---

[15] See Horton, 690 F.2d at 484 (holding that, in the case of a plaintiff class of students challenging the constitutionality of canine searches on school campuses, the interests of dissenting students were adequately represented by the defendant school); Dierks, 414 F.2d at 456 (holding that, in a case brought by former employees against the

the proposed class in this action have interests unrelated

to those of Headwaters.  For example, whether or not

Marilyn and Mary Ann Davidson's Adtech shares are valid has

no impact on Headwaters but is of potentially substantial

value both to the Davidsons and to the other members of the

class, who stand to gain a greater share of any eventual

damages if the Davidsons' shares are invalid.  Moreover,

none of the cases certifying a class despite some

dissenting membership involved claims that, if successful,

would require some members of the plaintiff class to pay

damages to other members of the plaintiff class.  This

antagonism among members of the putative class is an

insurmountable impediment to class certification of a class

of all Adtech shareholders.  Accordingly, the Court DENIES

---

managers of their pension plan, a class of all former employees could
be certified notwithstanding the dissenting views of members of the
class because their position that the defendants had not mismanaged
their pension funds was also asserted by the defendants); Stolz, 620
F. Supp. at 405 (holding that, in a case challenging union dues
increases, a class of all union members could be certified despite some
members having approved the dues increase because the dues increase was
attached to a wage increase and because the union could represent the
views of those members who indeed wanted the dues increase); Arthur v.
Starrett City Assocs., 98 F.R.D. 500, 506 (E.D.N.Y. 1983)(holding that,
in a case involving residential application screenings, a class of
rejected applicants could be certified despite some accepted
applicants' approval of the challenged policy); Sturdevant v. Deer, 73
F.R.D. 375, 378 (D. Wis. 1976)(holding that, in an action by members of
the Menominee Tribe against tribal committees and business enterprises,
class certification of the entire tribal membership was appropriate
despite the dissenting views of many putative plaintiffs because those
views were also espoused by the defendants); Rota v. Bhd. of Ry.,
Airline & S.S. Clerks, 64 F.R.D. 699, 706 (N.D. Ill. 1974)(citing
Dierks, 414 F.2d at 457).

Plaintiffs' Motion to Certify a Class pursuant to

Rule 23.2.[16]

## III. Rule 23 Certification

Plaintiffs seek, in the alternative, to certify a

class of Adtech shareholders who did not receive dividends

payments through their interests in the second Adtech

pursuant to Federal Rule of Civil Procedure 23.  A court

may certify a class pursuant to Rule 23 if it performs

"rigorous analysis" of the requirements of Rule 23(a).

Stout v. J.D. Byrider, 228 F.3d 709, 716 (6th Cir.

2000)(citing Gen. Tel. Co. v. Falcon, 457 U.S. 147, 161

(1982)).  The trial court has broad discretion in deciding

whether to certify a class, but that discretion must be

exercised within the framework of Rule 23.  Gulf Oil Co. v.

Bernard, 452 U.S. 89, 100 (1981).  The party seeking the

class certification bears the burden of proof.  See Falcon,

---

[16] Defendant also argues that certification under Rule 23.2 is
inappropriate in this case because Tennessee law treats unincorporated
associations as jural entities with the capacity to sue on their own
behalf.  See, e.g., Patrician Towers Owners, Inc. v. Fairchild, 513
F.2d 216, 220 (4th Cir. 1975); 7C Charles Alan Wright, Arthur R.
Miller, & Mary Kay Kane, Federal Practice and Procedure § 1861 (3d ed.
2007)("Rule 23.2 is a procedural device that provides a supplementary
method for unincorporated associations to litigate in a federal court
and should not be viewed as in conflict with existing state practice on
the subject. . . .  Despite these arguments, the clear trend in cases
decided since the adoption of Rule 23.2 has been to follow the pre-1996
Third Circuit approach of honoring the state law prohibition against
suit.").  Having determined that the putative class does not constitute
an unincorporated association and that, even if it did, the named
Plaintiffs cannot fairly and adequately represent such an entity, the
Court need not decide whether or not Tennessee law precludes
certification under Rule 23.2.

457 U.S. at 161; <u>Senter v. Gen. Motors Corp.</u>, 532 F.2d 511, 522 (6th Cir. 1976). Rule 23(a) requires that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."

A class must meet all four of these prerequisites and fall within at least one of the subcategories of Rule 23(b) to warrant certification. Plaintiffs move for certification pursuant to Rule 23(b)(3), which requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." In actions brought under Rule 23(b)(3) an initial determination of commonality under Rule 23(a)(2) is superfluous and redundant and may be dealt with simultaneously. <u>See</u> 7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, <u>Federal Practice & Procedure</u> § 1763 n.11 (3d ed. 2005).

With approximately one hundred members in nine states in the putative class, Defendant does not contest that Plaintiff meets Rule 23(a)'s numerosity requirement because joinder would be impracticable.  See, e.g., Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001)(reasoning that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met"); Gaspar v. Linvatec Corp., 167 F.R.D. 51, 56 (D. Ill. 1996)(finding that eighteen former employees in three states satisfied the numerosity requirement); Lanning v. Se. Pa. Trans. Auth., 176 F.R.D. 132, 147-48 (E.D. Pa. 1997)(certifying a class of twenty-two women who failed a physical fitness test).  Instead, Defendant challenges the putative class's definition, commonality, typicality, and representation.  The Court will address each challenge in turn.

**A. Class Definition**

Plaintiffs define their putative class as "[a]ll shareholders of the First Adtech, their heirs, successors, and assigns, who did not receive dividends through the Second Adtech."  (Pls.' Supp. Mem. (Doc. 567) at 12.)  Rule 23(c)(1)(B) provides that if a court enters an "order that certifies a class action [it] must define the class and the class claims, issues, or defenses, and must appoint class

counsel under Rule 23(g)."  Satisfaction of Rule

23(c)(1)(B) is the Court's rather than Plaintiffs' burden.

Class "definition remains subject to changes and does not

necessarily establish the class [that] will ultimately be

bound by the judgment."  See Penk v. Or. D. of Higher Ed.,

93 F.R.D. 45, 49 (D. Or. 1981)(citing Wofford v. Safeway

Stores, Inc., 78 F.R.D. 460 (N.D. Cal. 1978)); see also

Barney v. Holzer Clinic, Ltd., 110 F.3d 1207, 1213 (6th

Cir. 1997)(finding clear error in the district court's

failure to modify the class definition "when it became

clear that the named plaintiffs were not appropriate

representatives of such a broad class").  The class "does

not have to be so ascertainable that every potential member

can be identified . . . .  If the general outlines of the

membership of the class are determinable at the outset of

the litigation, a class will be deemed to exist."  7A

Wright, Miller, & Kane, § 1760 (citing, inter alia, Doe v.

Charleston Area Med. Ctr., Inc., 529 F.2d 638 (4th Cir.

1975); Yaffe v. Powers, 545 F.2d 1362 (1st Cir. 1972);

Carpenter v. Davis, 424 F.2d 257 (5th Cir. 1970)).

Headwaters argues that the proposed class has no legal

rights in the '629 Patent and, therefore, bears no legal or

logical relationship to the claims in this case and that

the validity of members' shares are not readily

discernible.  The first challenge is also asserted in Headwaters's Motions for Summary Judgment (Docs. 525, 527, & 529).  That motion is the appropriate context for this merits-based argument.  See Beattie v. CenturyTel, Inc., 511 F.3d 554, 560 (6th Cir. 2007)(quoting Eisen v. Carlisle, 417 U.S. 156, 178 (1974)).  Likewise, the question of a few individual class members' shares' validity is more appropriately addressed at a later stage in litigation, once the distribution of Plaintiffs' interest in any eventual damages calculation is at issue.

**B. Common Interests, Predominance, & Manageability**

Although Rule 23(a)(2) speaks of "questions" in the plural, the United States Court of Appeals for the Sixth Circuit has held that there need only be one question common to the class.  See Sprague v. Gen. Motors Corp., 133 F.3d 388, 397 (6th Cir. 1998)(citing In re Am. Med. Sys. Inc., 75 F.3d 1069, 1080 (6th Cir. 1996); see also Sterling v. Velsicol Chem. Corp., 855 F.2d 1188, 1197 (6th Cir. 1988)(holding that the "mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dictate the conclusion that a class action is impermissible"); Johnston v. HBO Film Mgmt., Inc., 265 F.3d 178, 184 (3d Cir. 2001)("Commonality does

not require an identity of claims or facts among class members; instead the commonality requirement will be satisfied if the named plaintiffs share at least one question of fact or law with the grievances of the prospective class.")(citation omitted).  However, this common issue must be one whose resolution will advance the litigation.  Sprague, 133 F.3d at 397.

In this case the putative class asserts a single, common claim of civil conspiracy to be remedied under a theory of constructive trust.  This claim will require determination of the following common issues: whether Davidson and Headwaters knowingly engaged in a scheme to deprive Plaintiffs of the '629 Patent's profits and whether that conduct warrants an award of punitive damages against Headwaters.  Headwaters argues that their liability will depend on individualized determinations of each element of common law fraud to establish Plaintiffs' civil conspiracy claim.  However, as alleged, Plaintiffs' case is based on a common misrepresentation by Davidson to all Adtech shareholders that Adtech remained a legally-recognized and functioning corporation engaged in the coal agglomeration technology business.  These common questions of fact and law are sufficient to satisfy Rule 23(a)(2).

Compare <u>Arenson v. Whitehall Convalescent & Nursing Home,</u> <u>Inc.</u>, 164 F.R.D. 659, 666 (N.D. Ill. 1996)("Even for the common law fraud claim, which requires proof of reliance, it is well established that individual issues of reliance do not thwart class actions.")(citations omitted), <u>and</u> <u>Gruber v. Price Waterhouse</u>, 117 F.R.D. 75 (E.D. Pa. 1987) ("[T]he existence of individual questions of reliance does not defeat class certification . . . ."), <u>with</u> <u>Am. Med.</u> <u>Sys.</u>, 75 F.3d at 1085 ("In products liability actions, however, individual issues may outnumber common issues.  No single happening or accident occurs to cause similar types of physical harm or property damage.  No one set of operative facts establishes liability.  No single proximate cause applies equally to each potential class member and each defendant.").

Though Plaintiffs' claims initially satisfy the commonality requirement of Rule 23(a)(2), whether or not they also satisfy the predominance and superiority requirements of Rule 23(b)(3) requires additional scrutiny. "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  <u>In re Visa</u> <u>Check/MasterMoney Antitrust Litig.</u>, 280 F.3d 124, 136 (2d Cir. 2001)(<u>quoting</u> <u>Amchem Prods. Inc. v. Windsor</u>, 521 U.S.

591, 623 (1997)).  To meet the predominance requirement of Rule 23(b)(3), a plaintiff must establish that "the issues in the class action that are subject to generalized proof, and thus applicable to the class as a whole, . . . predominate over those issues that are subject only to individualized proof."  Id. (quoting Rutstein v. Avis Rent-A-Car Sys., Inc., 211 F.3d 1228, 1233 (11th Cir. 2000) (internal quotation marks omitted).  "Predominance is a test readily met in certain cases alleging consumer or securities fraud . . . ."  AmChem Prods., 521 U.S. at 625; see also Moore v. PaineWebber, Inc., 306 F.3d 1247, 1253 ("[A] fraud perpetrated on numerous persons by the use of similar misrepresentations may be an appealing situation for a class action, and it may remain so despite the need, if liability is found, for separate determination of the damages suffered by individuals within the class.")(quoting Fed. R. Civ. P. 23(b)(3) Adv. Comm. Notes, 28 U.S.C.App., p. 697).

In this case, the common questions of law and fact common to all putative class members predominate over those affecting only individual members.  Headwaters asserts that potential choice of law issues preclude a predominance finding.  The only potential conflict-of-law in this case is with respect to common law standards for establishing

fraud in the ten states from which the putative plaintiffs hail. This potential conflict is one the Court can manage. See Bussie v. Allmerica Fin. Corp., 50 F. Supp. 2d 59, 71 (D. Mass. 1999); Elkins v. Equitable Life Ins., 1998 WL 133741, at *17 (M.D. Fla. Jan. 27, 1998); In re Telectronics Pacing Sys., Inc., 172 F.R.D. 271, 292 (S.D. Ohio 1997)("[S]tate law does not need to be universal in order to justify nationwide class certification.")(citing In re Am. Med. Sys., 75 F.3d at 1085); Kurczi v. Eli Lilly & Co., 160 F.R.D. 667, 674 (N.D. Ohio 1995)(citing In re Sch. Asbestos Litig., 789 F.2d 996, 1010 (3d Cir. 1986). Moreover, "failure to certify an action under Rule 23(b)(3) on the sole ground that it would be unmanageable is disfavored and should be the exception rather than the rule." In re Visa Check/MasterMoney Antitrust Litig., 280 F.3d 124, 140 (2d Cir. 2001)(citations omitted). Finally, the statute of limitation has run for putative class members not named in the original suit, rendering the majority of the putative plaintiffs' individual claims unavailable. See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1023 (9th Cir. 1998)(finding class action superior where some plaintiffs' claims were timed barred from proceeding individually). Accordingly, the Court finds that the common issues of fact and law in this case are sufficiently

predominant to warrant class certification and that
adjudication of these claims together is the superior
procedural approach.

## C. Typicality

Rule 23(a)(3) requires that "claims or defenses of the
representative parties [be] typical of the claims or
defenses of the class."  "Typicality determines whether a
sufficient relationship exists between the injury to the
named plaintiff and the conduct affecting the class, so
that the court may properly attribute a collective nature
to the challenged conduct."  Am. Med. Sys., 75 F.3d at 1082
(citations omitted).  A plaintiff's claim is typical if it
arises from the same event, practice, or course of conduct
that gives rise to the claims of other class members, and
if his or her claims are based on the same legal theory.
Id.  The "premise of the typicality requirement is simply
stated: as goes that claim of the named plaintiff, so go
the claims of the class."  Sprague, 133 F.3d at 399.

Plaintiffs have alleged a single course of conduct by
Headwaters and Davidson with respect to all members of the
putative plaintiff class that is the basis of the class
claim's legal theory.  As discussed above, the proof of
this conduct will be generalized, not individual.

Accordingly, the named Plaintiffs' claims are typical of the class members' claims.

### D. Representation

The United States Court of Appeals for the Sixth Circuit has delineated "two criteria for determining whether the representation of the class will be adequate: 1) The representative must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." Senter, 532 F.2d at 524-25 (citations omitted). The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members. Am. Med. Sys., 75 F.3d at 1083.

After nearly six years of litigation, there is no question in this case that the named Plaintiffs' counsel can and will provide competent and effective representation of the putative class. In addition, with a class definition that excludes those Adtech shareholders who received dividend payments from the second Adtech, there is no longer antagonism or direct conflict among the shareholders. However, there remains a dispute as to the extent to which the named Plaintiffs' interests are in

common with the members of the putative class.  Headwaters
asserts that there is a question as to the validity of
named Plaintiffs Phillip Boynton's and Shannon Nonn's
Adtech shares.  If their shares were not valid the
remaining plaintiffs' portion of any eventual damages would
be increased.  In addition, in his deposition in 2005,
Boynton testified that he did not believe that the members
of the putative class should share in the proceeds of the
Davidson settlement agreement.  (Boynton Dep. (Doc. 458,
Ex. 2) at 139.)

     Neither of these conflicts with Boynton renders the
named Plaintiffs inadequate representatives of the putative
class.  First, the other named Plaintiffs have the same
interest in the validity or invalidity of Boynton's and
Nonn's shares as do the other members of the putative
class.  The Court notes that the question of those shares'
validity has only been raised by the second Adtech's board
of directors, not by Headwaters or any other party to this
action.  Nevertheless, if, in the eventual allocation of
damages, these shares' validity is at issue, then the
interests of the Plaintiffs will be no more divided than in
any case in which a sum of money must be shared among a
variable number of class members.  Such dilution concerns
cannot render the named Plaintiffs inadequate

representatives for the purposes of pursuing and securing a favorable outcome to this litigation.

Similarly, Boynton's deposition testimony does not disqualify the named Plaintiffs as representatives of the class. The deposition in question was taken before Plaintiffs filed the pending Motion to Certify, when they were contesting Headwaters's Motion to Dismiss for failure to join indispensable parties and when Plaintiffs still sought a trial not as class representatives but only in their individual capacities. (Bernard Decl. (Doc. 567, Ex. A) ¶ 4.) Since then, named Plaintiff Aaron Scott Bernard has testified that "the named plaintiffs do not intend, under any circumstances, to assert that the 510,000 shares derived from Macrotech dilute the percentage interest of any other members of the class in a damage award. The named plaintiffs have committed and hereby confirm their commitment that no members of the class will be disadvantaged by the acquisition of the disputed 510,000 shares formerly held by Macrotech." (Bernard Decl. ¶ 7.) Bernard also testified that, though collection of any judgment against Davidson is extremely unlikely, "the named plaintiffs agree to share any proceeds collected from Mr. Davidson with the other members of the class to the same extent as amounts recovered from Headwaters." (Id. ¶ 9.)

Accordingly, the Court finds that Plaintiffs have met their burden and established that they can adequately represent the putative class in this action.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Plaintiffs have satisfied the requirements of Federal Rules of Civil Procedure 23(a) and 23(b)(3) and, therefore, GRANTS Plaintiffs' Motion to Certify.  The class is defined as follows:

> All shareholders of the First Adtech, their heirs, successors, and assigns, who did not receive dividends through the Second Adtech.

This class claims that Headwaters and Davidson engaged in a civil conspiracy to defraud the members of the Plaintiff class and that Davidson's underlying fraud serves as the basis for remedy by constructive trust.  Plaintiffs' counsel is ORDERED to designate in writing the individual or individuals who seek appointment as class counsel, in accordance with Federal Rule of Civil Procedure 12(g) by Friday, September 5, 2008.  Within fourteen days of the date of this Order, the parties shall file a joint proposed notice pursuant to Federal Rule of Civil Procedure 23(c)(2)(B) and a list of all persons who meet the class

definition, including name, address, telephone number,

number of shares, and date of share acquisition.

So ORDERED this 26th day of August, 2008.


_/s/ JON P. McCALLA_
UNITED STATES DISTRICT JUDGE