UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | | |
|---|---|---|
| PHILLIP E. BOYNTON, CLARENCE W. BOYNTON, NORMA ANN LOGAN, RENELDA J. WESTFALL, SHANNON NONN, AARON SCOTT BERNARD, ALAN F. BERNARD, LINDA R. BERNARD, and DAVID ALAN BERNARD, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) ) | 02-1111-JPM |
| vs. | ) ) ) | |
| HEADWATERS, INC., | ) ) ) | |
| Defendant. | ) | |

**ORDER DENYING MOTIONS FOR SUMMARY JUDGMENT**

Pending before the Court are Defendant Headwaters, Inc.'s ("Headwaters") Motions for Summary Judgment and Memoranda in Support of said motions (Docs. 524, 525, 526, 527, 528, & 529), all filed December 6, 2007. The named Plaintiffs filed a consolidated Response in Opposition (Doc. 531) on January 15, 2008. Headwaters filed four reply briefs (Docs. 543, 544, 545, & 546) on February 4, 2008. The Court held a hearing in this matter on March 12, 2008. For the foregoing reasons, the Court DENIES Headwaters's Motions for Summary Judgment.

**I. Background**

    **A. Factual History**

As previously discussed on pages two through eight of the Order Granting Motion to Certify Class Pursuant to Rule 23, the factual allegations and procedural history of the case are as follows: Plaintiffs bring a civil conspiracy action on behalf of a putative class of investors. According to the Amended Complaint, at some time in the late 1980s Plaintiffs invested in Adtech, Inc. of Illinois ("Adtech"), an Illinois corporation formed on November 23, 1987, to develop and commercialize coal agglomeration technology. (Am. Compl. ¶ 8.) Coal agglomeration combines small particles of coal, rock, and other materials, removing undesirable impurities and reducing raw coal to a more usable state. (Am. Compl. ¶ 10.) James G. Davidson, a former Defendant in this case, oversaw Adtech's operations, including the development of the agglomeration process eventually patented as U.S. Patent No. 5,238,629 ("the '629 Patent"). (Am. Compl. ¶ 15.)

Davidson filed his application for the '629 Patent on August 9, 1991, along with an assignment to Adtech of his interest in the '629 Patent. (Patent Application Transmittal Letter (Doc. 80 at 35-37).) Davidson received $10,000 and Adtech stock, which was issued to members of

Davidson's family, in consideration for the assignment. (Am. Compl. ¶ 16; see also Pls.' Shareholder List (Doc. 80 at 30-33); Def.'s Shareholder List (Doc. 15 at 36-42).) Listing Davidson as "Inventor" and Adtech as "Assignee," the United States Trademark and Patent Office issued the '629 Patent on August 24, 1993. ('629 Patent (Doc. 80 at 40).)

On April 1, 1991, four months before Davidson filed his patent application, Illinois's Secretary of State administratively dissolved Adtech for failure to file an annual report. (Certificate of Dissolution (Doc. 15 at 43-44).) As a result of the dissolution, the assignment of the '629 Patent to Adtech failed to effect a transfer of rights. See Adtech v. Davidson, Case No. 00-1244, Order Granting Defendants' Motions to Dismiss 2-3 (W.D. Tenn. Aug. 8, 2001). Davidson failed to inform Plaintiffs of the dissolution and continued to operate Adtech as if it had not been dissolved for more than seven years. (Am. Compl. ¶ 18; see also Oct. 27, 1993, Letter from the President (Doc. 136 at 17-18); Aug. 1, 1994, Notice of Stockholder Meeting Date Change (Doc. 136 at 19); May 25, 1999, Davidson Report to Shareholders (Doc. 136 at 20); Davidson Settlement Agreement ¶ 2.A.) The dissolved Adtech's ongoing business transactions included the grant of a

3

license in the '629 Patent to Carbontec Energy Corporation ("the Carbontec license") on July 18, 1996, and the receipt of royalties from that license. (Carbontec License Agreement (Doc. 136 at 35); Hoover Dep. (Doc. 540-29) at 51.)

In 1998, Davidson began arrangements to transfer his rights in various patents, including the '629 Patent, to Headwaters.[1] (See Mutual Non-Disclosure Agreement (Doc. 136 at 25).) During these discussions, Davidson disclosed Adtech's dissolution to Headwaters and its counsel, who subsequently investigated Adtech's corporate status and confirmed its dissolution. (Davidson Settlement Agreement ¶ 2.F; Investigation Summary (Doc. 238, Ex. 18) at 7 ("Each of the patents is assigned to a business that is no longer in operation – could this be because he is putting an asset into a company and raising money then pulling the plug[?]").)

On May 14, 1998, a second Adtech, Inc. of Illinois ("the second Adtech") was formed.[2] (Articles of Incorporation (Doc. 540-12).) The second Adtech had a single shareholder, the Macrotech Corporation, which was in

---

[1] In 1998, Headwaters operated as Covol Technologies, Inc.
[2] Illinois law permanently precludes reinstatement of an administratively dissolved company five years after the administrative dissolution. See 805 Ill. Comp. Stat. 5/12-80 (2001). Therefore, Illinois law prevented Adtech's reinstatement after April 1, 1996, and the 1998 incorporation created a new and separate entity.

4

turn controlled by Davidson. (Hoover Dep. 54, 55.) On October 21, 1998, the second Adtech transferred its purported rights in the '629 Patent to Davidson. (Davidson Patent Purchase Agreement (Doc. 540-17).) On the same day, Davidson and Headwaters executed a Patent Purchase Agreement, transferring all of Davidson's rights in the '629 Patent. (Headwater's Patent Purchase Agreement (Doc. 136 at 31).) Counsel for Headwaters prepared both patent purchase agreements. (Davidson Settlement Agreement ¶ 2.F.) On November 10, 1998, Davidson executed an agreement on behalf of the second Adtech transferring rights in the Carbontec License to Headwaters. (Contract Interest in Patent Purchase Agreement (Doc. 540-19).)

Davidson did not inform, much less seek the approval of, the Adtech shareholders before executing the patent purchase agreements. (Davidson Settlement Agreement ¶ 2.G.) Although the patent purchase agreement between Davidson and the second Adtech contained a provision for payment of $130,000, Davidson characterized his consideration for the '629 Patent as debt forgiveness. (May 25, 1999, Davidson Report to Shareholders.) In exchange for the '629 Patent and Carbontec License, Headwaters issued 60,000 shares of its common stock to the second Adtech and to the Macrotech Corporation.

(Investment Agreement (Doc. 540-20).) Davidson used the proceeds from the sale of the Macrotech Corporation's shares to pay a "federal criminal restitution," which reduced his sentence of incarceration imposed following his pleading guilty to various federal fraud charges. (Davidson Settlement ¶ 2.H; Hoover Dep. 99-101.) On May 5, 1999, in a report to Adtech's shareholders, Davidson disclosed details of the patent purchase agreements with Headwaters. (May 25, 1999, Davidson Report to Shareholders.) Davidson disclosed Adtech's administrative dissolution to its shareholders in his letter of resignation on November 23, 1999. (Nov. 23, 1999, Davidson Letter to Shareholders (Doc. 540-26).)

On March 24, 2000, the second Adtech held a "special meeting of the board of directors." (Special Meeting Minutes (Doc. 458, Ex. 9)). In attendance were Tom Patton, Robert Hastie, Mark Hastie, Graydon Hoover, Bob Austin, Jerry Turner, and Robert Wilson. (Id. at 1.) Lowell Tison was absent. (Id.) At the meeting, these directors unanimously elected officers and ratified the patent purchase agreements with Headwaters "as the act[s] and deed[s] of the Corporation." (Id.) The directors, including Lowell Tison and Donald Hastie, met again on July 7, 2000, and discussed, among other things, "whether or not

6

Phil Boynton had ever paid the initial capital contribution of $200.00 for the shares of stock in Adtech." (Board Meeting Minutes (Doc. 458, Ex. 15).) Though the record is unclear as to when the second Adtech issued additional shares, Marilyn Davidson, Donald Hastie, Mark Hastie, Bonnie Hastie, Robert Hastie, Bowden Enterprises, Inc., Jerry Turner, Robert Wilson, and Tom Patton's estate each received dividend payments as its shareholders. (Stockholder & Dividend Information (Doc. 458, Ex. 10)).

**B. Procedural Posture**

On August 21, 2000, three of the named plaintiffs in this action filed suit on behalf of Adtech against Davidson and Headwaters alleging an unlawful sale of the '629 Patent without corporate authorization. <u>Adtech, Inc. of Ill. v. Davidson</u>, Case No. 00-1244 (W.D. Tenn. 2000). On August 28, 2001, the Honorable James D. Todd dismissed the action for lack of subject matter jurisdiction, holding that Adtech never owned the '629 Patent and, consequently, lacked standing to assert ownership rights to it. <u>Id.</u> Order Granting Defendants' Motions to Dismiss 2-3 (W.D. Tenn. Aug. 8, 2001).

On May 6, 2002, Plaintiffs filed the current lawsuit in their individual capacities against Headwaters, Davidson, and Davidson and Adtech's accountant, A. Graydon

7

Hoover.  In October of 2004, Plaintiffs dismissed Hoover as a result of his filing for bankruptcy.  On September 26, 2005, the Court accepted Plaintiffs' settlement agreement with Davidson and dismissed him from the action.  On October 31, 2005, the Court granted Headwaters's motion for summary judgment and dismissed the action.  On July 27, 2007, the Federal Circuit reversed the Court's dismissal of Plaintiffs' civil conspiracy claims against Headwaters.  On August 26, 2008, the Court certified a class of Plaintiffs who were shareholders in Adtech but did not receive dividends through the second Adtech.

## II. Standard of Review

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989).  In considering a motion for

summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc.,799 F.2d 1128, 1133 (6th Cir. 1986) see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

When confronted with a properly-supported motion for summary judgment, the nonmoving party "must – by affidavits or as otherwise provided in this rule - set out specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2); see also Abeita v. TransAm. Mailings, Inc., 159 F.3d 246, 250 (6th Cir. 1998).  However, "'[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient.'" Street v. J.C. Bradford & Co., Inc., 886 F.2d 1472, 1479 (6th Cir. 1989) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.  In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it

is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**III. Analysis**

Headwaters moves for summary judgment on Plaintiffs' civil conspiracy claim, arguing that "Plaintiffs' remaining claim against Headwaters must be dismissed unless Plaintiffs can establish rights in the '629 Patent prior to the sale of the patent to Headwaters." (Def.'s Mem. (Doc. 527) at 1.) Specifically, Headwaters argues that Davidson did not transfer his rights in the '629 Patent either by assignment or contract and did not violate any fiduciary duty to Plaintiffs and that, therefore, Plaintiffs cannot assert any interest in the '629 Patent.

Plaintiffs seek equitable relief under a theory of constructive trust resulting from injuries caused by acts of civil conspiracy. A civil conspiracy is a "combination of two or more persons who, each having the intent and knowledge of the other's intent, accomplish by concert an unlawful purpose, or accomplish a lawful purpose by unlawful means, which results in damage to the plaintiff." Trau-Med of Am., Inc. v. Allstate Ins. Co., 71 S.W.3d 691, 703 (Tenn. 2002). The requisite elements of the cause of

action are common design, concert of action, and an overt act. Koehler v. Cummings, 380 F. Supp. 1294, 1313 (M.D. Tenn. 1974). Injury to person or property, resulting in attendant damage, must also exist. Id. In this case, Davidson's alleged fraudulent acts serve "as an underlying tort to the civil conspiracy claim against Headwaters." Boynton v. Headwaters, Inc., 243 Fed. App'x 610, 616 (Fed. Cir. 2007)("[P]laintiffs point to evidence in the record, that, when viewed in the light most favorable to plaintiffs as the non-moving party, could lead a reasonable jury to find that Headwaters participated in the alleged underlying fraud by Mr. Davidson against plaintiffs.").

"A constructive trust may . . . be imposed against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment or questionable means, has obtained an interest in property which he ought not in equity or in good conscience retain." Intersparex Leddin KG v. Al-Haddad, 852 S.W.2d 245, 249 (Tenn. Ct. App. 1992)(citation omitted). Tennessee courts have imposed constructive trusts in four types of cases: (1) Where a person procures the legal title to property in violation of some duty, express or implied, to the true owner; (2) where the title to property is obtained by

fraud, duress, or other inequitable means; (3) where a person makes use of some relation of influence or confidence to obtain the legal title upon more advantageous terms than could otherwise have been obtained; and (4) where a person acquires property with notice that another is entitled to its benefits.  Myers v. Myers, 891 S.W.2d 216, 219 (Tenn. Ct. App. 1994)(citations omitted).  Plaintiffs' allegations fall within the second category, which, unlike the first category, requires neither proof of legal title nor an express or implied duty, contrary to what Headwaters asserts.

Plaintiffs allege that Davidson misrepresented Adtech's corporate status and interest in the '629 Patent at least as early as April of 1991.  But for these misrepresentations, Plaintiffs might have moved to reincorporate Adtech within the permissible window for reinstatement, perfected the failed assignment of rights in the '629 Patent, or ensured that the transfer of rights in the '629 Patent benefited all of Adtech's shareholders.  Plaintiffs' investment in Adtech entitled them to these opportunities.  As alleged, their equitable interest in the '629 Patent flows from the deprivation of these rights.  Plaintiffs' theory of relief is an equitable one, which does not require proof of property rights in the '629

Patent, only of the loss of some property right by inequitable means. Viewing Plaintiffs' allegations in the light most favorable to them, they have met this burden. Accordingly, Headwaters's arguments that Plaintiffs lack legal rights in the '629 Patent are inapposite, and the Court DENIES Headwaters's Motions for Summary Judgment.

**IV. Conclusion**

For the reasons discussed, the Court finds that Plaintiffs have established genuine issues of material fact as to Headwaters's involvement in a civil conspiracy that deprived Plaintiffs of their equitable interest in the '629 Patent. Therefore, the Court DENIES Headwaters's Motions for Summary Judgment.

So ORDERED this 26th day of August, 2008.

/s/ JON P. McCALLA
UNITED STATES DISTRICT JUDGE