IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

```
PHILIP E. BOYNTON et al.,      )
                               )
     Plaintiffs,               )
                               )
vs.                            )     No. 1:02-cv-01111-JPM-egb
                               )
HEADWATERS, INC. et al.,       )
                               )
     Defendants.               )
```

**ORDER GRANTING IN PART AND DENYING IN PART HEADWATERS'S MOTION FOR SUMMARY JUDGMENT AS TO ALL UNNAMED MEMBERS OF THE PLAINTIFF CLASS**

Before the Court is Defendant Headwaters, Inc.'s Motion for Summary Judgment as to All Unnamed Members of the Plaintiff Class (Docket Entry ("D.E.") 790), filed April 14, 2010. The Class responded in opposition on May 20, 2010 (D.E. 811), and Headwaters filed a reply on June 1, 2010 (D.E. 821). For the following reasons, the motion is GRANTED in part and DENIED in part.

**I. Background**

The facts underlying this matter are set out in detail in, *inter alia*, the Court's Order Granting Motion to Certify Class Pursuant to Rule 23. (D.E. 574.) In brief, this case concerns a scheme by James Gary Davidson to fraudulently deceive investors in an Illinois corporation called Adtech. Davidson was the inventor of U.S. Patent No. 5,238,629 (the "'629

1

Patent"), which relates to coal energy production. Davidson represented that he had transferred his rights to the '629 Patent to Adtech, but he knew that Adtech had been administratively dissolved by the Illinois Secretary of State. Davidson accordingly retained his rights to the patent. Eventually, Davidson conspired with Headwaters to transfer his rights in the '629 Patent and an associated valuable license (the "Carbontec license") to Headwaters, unbeknownst to Adtech's putative shareholders. (See generally id.)

In June 2009 the Court conducted the first segment of a bifurcated trial in this matter. The first jury found, *inter alia*, that Headwaters engaged in a civil conspiracy with Davidson to defraud the Class[1] of the profits from the '629 Patent. (See Jury Verdict Form (D.E. 750) 4.)

The second phase of trial is set for August 30, 2010. The second jury will consider the individual issues such as reasonable reliance with regard to the Unnamed Plaintiffs. The Court will consider certain equitable issues, including the Class's claim for the imposition of a constructive trust and Headwaters's equitable defenses. (See Order Following Hr'g (D.E. 775) 2.) Headwaters now moves for summary judgment as to the Unnamed Plaintiffs.

---

[1] The Class consists of the Named Plaintiffs and the Unnamed Plaintiffs.

2

**II. Whether Headwaters's Summary Judgment Motion Is Timely**

The Court must first address the Class's contention that a motion for summary judgment is procedurally improper at this stage in the litigation. This argument fails. Federal Rule of Civil Procedure 56 permits courts to determine when motions for summary judgment may be filed. See Fed. R. Civ. P. 56(c)(1). Upon the parties' joint motion the Court allowed the parties until April 14, 2010 to file dispositive motions. (See Order Regarding Agreed Mot. to Extend Time in Which to File Dispositive Mots. (D.E. 786) 1.) The instant motion was timely filed on April 14, 2010. Headwaters may move for summary judgment.

**III. Standard of Review**

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). So long as the movant has met its initial burden of "demonstrat[ing] the absence of a genuine issue of material fact," Celotex, 477 U.S. at 323, and the nonmoving party is unable to make such a showing, summary judgment is appropriate. Emmons v. McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989). In

considering a motion for summary judgment, however, "the evidence as well as all inferences drawn therefrom must be read in a light most favorable to the party opposing the motion." Kochins v. Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986).

When confronted with a properly supported motion for summary judgment, the nonmoving party "must – by affidavits or as otherwise provided in [Rule 56] – set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). However, "[t]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient." Street v. J.C. Bradford & Co., Inc., 886 F.2d 1472, 1479 (6th Cir. 1989) (quotation marks and citation omitted). A genuine issue of material fact exists for trial "if the evidence [presented by the nonmoving party] is such that a reasonable jury could return a verdict for [that party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In essence, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Id. at 251-52.

**IV. Analysis**

Headwaters moves for summary judgment as to the Unnamed Plaintiffs on both collective and individualized grounds. As to

4

all of the Unnamed Plaintiffs, Headwaters contends that they cannot prove that they had an equitable interest in the '629 Patent. Headwaters also argues that 35 U.S.C. § 262 bars all the Unnamed Plaintiffs' claims. For its individualized arguments, Headwaters has organized the Unnamed Plaintiffs into several groups, and makes arguments specific to each group. The Court will consider each argument in turn.

### A. Whether the Class's Claims Are Derivative, and Whether the Class May Establish an Equitable Interest in the '629 Patent

Headwaters's first argument is a combination of two contentions that the Court has already rejected. The Court held in 2009 that the Class's claims, including those of the Unnamed Plaintiffs, are not derivative claims. (See Order Den. Headwaters, Inc.'s Mot. for Recons. (D.E. 668) 10.) The Court determined in 2008 that there is sufficient evidence from which the Class, including the Unnamed Plaintiffs, could demonstrate an equitable interest in the '629 Patent. (See Order Den. Mots. for Summ. J. (D.E. 575) 12-13.) Headwaters's instant motion does not explicitly ask the Court to reconsider these decisions, and Headwaters has not addressed the standard for such reconsideration. After careful consideration of Headwaters's submissions, the Court declines to revisit these prior rulings.

This section of Headwaters's brief also makes the argument that certain Unnamed Plaintiffs who did not pay for their Adtech

shares cannot establish an equitable interest in the '629 Patent. The Court rejects this argument because Headwaters has provided no legal support for the proposition that one who obtains shares of stock other than by paying for them necessarily has lesser rights as a shareholder. "It is not [a court's] job, especially in a counseled civil case, to create arguments for someone who has not made them . . . ." <u>Yeomalakis v. FDIC</u>, 562 F.3d 56, 61 (1st Cir. 2009).

### B. Whether 35 U.S.C. § 262 Bars the Unnamed Plaintiffs' Claims

Under 35 U.S.C. § 262, "[i]n the absence of any agreement to the contrary, each of the joint owners of a patent may make, use, offer to sell, or sell the patented invention . . . without the consent of and without accounting to the other owners." Headwaters contends that § 262 bars the Unnamed Plaintiffs' claims because under that statute Davidson had the right to sell his interest in the '629 Patent without accounting to the Class. Headwaters cites to case law suggesting in dicta that fraud as between co-owners does not bar the exercise of rights under § 262. <u>See</u> <u>Fina Tech., Inc. v. Ewen</u>, 857 F. Supp. 1151, 1159 (N.D. Tex. 1994) (holding that the exercise of § 262 rights was not barred by the asserted inequitable conduct, and suggesting that the result would be the same as to fraudulent conduct).

Assuming for purposes of argument that the dictum in <u>Fina Technologies</u> is correct, the Court rejects Headwaters's

6

contention. Headwaters asserts that Davidson as a shareholder of Adtech was an equitable co-owner of the '629 Patent with the other Adtech shareholders.[2] Yet Headwaters has pointed to no authority holding that individual shareholders of a corporation that owns a patent are themselves "owners" of the patent within the meaning of § 262, so that individual shareholders could use or sell an interest in the corporation's patents unless a contract specified otherwise. Absent such authority, Headwaters's argument must fail. See Yeomalakis, 562 F.3d at 61.

    The Court also rejects Headwaters's argument to the extent that Davidson was the sole owner of the '629 Patent. Section 262 governs relationships between co-owners, and Headwaters has not articulated how this principle extends to fraud that occurs prior to the establishment of a co-ownership relationship or where no co-ownership relationship exists. That Davidson could use or alienate his rights in the '629 patent without accounting to any co-owners does not necessarily mean that Davidson could fraudulently deceive others into believing that the corporation in which they held shares was gaining and/or held ownership of the patent through his assignment. As above, Headwaters's

---

[2] The Court expresses no opinion as to the accuracy of this assertion or whether the first jury decided the issue, and assumes these facts only for purposes of decision.

argument fails because Headwaters has not provided authority to support it. See Yeomalakis, 562 F.3d at 61.

### C. Individualized Arguments

Headwaters next makes a series of arguments directed at groups of Unnamed Plaintiffs. The Court will first consider the groups that Headwaters contends cannot establish reasonable reliance. Next the Court will consider the groups Headwaters claims cannot recover for other reasons.

#### 1. Groups Headwaters Claims Cannot Establish Reasonable Reliance

The tort underlying the Class's civil conspiracy claim is fraud. Reasonable reliance is an element of fraudulent misrepresentation/omission. See Homestead Group, LLC v. Bank of Tenn., 307 S.W.3d 746, 752 (Tenn. Ct. App. 2009) (citation omitted). Factors to consider in determining whether a party reasonably relied are: (1) the party's sophistication; (2) whether there are longstanding business or personal relationships between the parties; (3) the relative availability of the information; (4) whether a fiduciary relationship exists between the parties; (5) whether there was concealment of the fraud; (6) whether the party had an opportunity to discover the fraud; (7) which party initiated the transaction; and (8) the specificity of the statements. City State Bank v. Dean Witter Reynolds, Inc., 948 S.W.2d 729, 737 (Tenn. Ct. App. 1996) (citations omitted). "Whether a plaintiff's reliance . . . is

reasonable is . . . generally a question of fact inappropriate for summary judgment." City State Bank, 948 S.W.2d at 737. The Court will address whether each group may establish reliance.

### a. Unnamed Plaintiffs Who Were Adtech Directors

Elie Hayon, Max Irvin, and James Fritz were Adtech directors, or at least believed they were, during Adtech's existence and/or after its dissolution. (See D.E. 791-35 at 14-15; D.E. 791-30 at 14; D.E. 791-26 at 10.) Headwaters argues that they cannot show reasonable reliance because as fiduciaries they had a duty to investigate Adtech's affairs and should have discovered the ongoing misconduct, and because at least some of them were aware of malfeasance at Headwaters.

Viewing the evidence in the light most favorable to the Class, the Court finds that a material fact dispute exists with regard to whether the putative Adtech directors reasonably relied on Davidson's misrepresentations and/or omissions. The testimony submitted by Headwaters indicates that Elie Hayon and Max Irvin were or should have been suspicious of Davidson, but it also tends to show that their relationship with Davidson was complicated and that they were to some extent at his mercy. For instance, Max Irvin described a scenario in which Davidson used his position as inventor of the '629 Patent and driving force in Adtech to threaten to leave with the patent if his authority was challenged. (See D.E. 791-35 at 11-12.) Further, the factual

9

record in this case is complex and the fraud stretches over a number of years.  Viewing the evidence in the light most favorable to the Class, the Court cannot say as a matter of law that the putative directors did not reasonably rely on Davidson's misrepresentations and/or omissions.

### b. Unnamed Plaintiffs Who Received No Communications About Adtech

Headwaters also points to deposition testimony in which certain Class members indicated that they received no communications about Adtech from Davidson or others. (Headwaters's Mem. 16-17.)  According to Headwaters, these Class members cannot show that they relied on a material omission because they received no communication in which material facts were omitted.  Headwaters misstates the law of fraudulent concealment, which is as follows:

> One who fails to disclose to another a fact that he knows may justifiably induce the other to act or refrain from acting in a business transaction is subject to the same liability to the other as though he had represented the nonexistence of the matter that he has failed to disclose, if, but only if, he is under a duty to the other to exercise reasonable care to disclose the matter in question.

Macon County Livestock Mkt., Inc. v. Ky. State Bank, Inc., 724 S.W.2d 343, 349 (Tenn. Ct. App. 1986) (quoting Restatement (Second) of Torts § 551(1) (1976)).  Under this rule, a material omission need not be contained in a statement otherwise full and truthful.  See Shadrick v. Coker, 963 S.W.2d 726, 736 (Tenn.

10

1998) (noting that where the duty to disclose exists, "mere silence or nondisclosure may constitute concealment") (citation omitted). One may commit fraud simply by failing to disclose a known material fact in violation of a duty to disclose. The misrepresentation comes from the victim's erroneous belief that the perpetrator of the fraud would have disclosed the material fact if the fact existed. See Shadrick, 963 S.W.2d at 735-36. The Court rejects Headwaters's argument that certain of the Unnamed Plaintiffs cannot show reasonable reliance merely because they did not receive communications about Adtech.

### c. Unnamed Plaintiffs Who Had No Communication with Davidson

Headwaters points to short excerpts of deposition testimony in which some Unnamed Plaintiffs stated that they never received any communications about Adtech from Davidson. (Headwaters's Mem. 13-15.) In response, the Class points to evidence suggesting that Davidson may have communicated with Adtech's shareholders through other individuals. (Class's Resp. 24.) Viewed in the light most favorable to the Class, the complicated nature of Davidson's dealings with the Class and the possibility that he may have spoken through others indicates that summary judgment is inappropriate. Further, as discussed above, that individuals did not receive communications from Davidson does not mean that he failed to disclose material facts under the fraudulent concealment theory.

### d. Unnamed Plaintiffs Who Testified that They Did Not Rely on Davidson

Some of the Unnamed Plaintiffs testified that they did not "rely" on "communications" from Davidson. (Headwaters's Mem. 17-20). Headwaters argues that they cannot establish the reasonable reliance element. The Court rejects this argument because as explained above, under the concealment theory a plaintiff may establish reasonable reliance on a material omission without showing that there was an incomplete communication. A mere failure to speak may be sufficient. That a plaintiff claims not to have relied on a communication does not mean that the plaintiff did not rely on Davidson's failure to communicate. Further, under the affirmative misrepresentation theory, that there was no reliance on statements from Davidson does not mean that there was no reliance on statements made by others on his behalf.

### e. Heirs of Deceased Adtech Shareholders

Several former Adtech shareholders are deceased, and their heirs are Unnamed Plaintiffs.[3] Headwaters argues that the heirs cannot show that their decedents reasonably relied on Davidson's statements and/or omissions. Glassner v. R.J. Reynolds Tobacco Co., 223 F.3d 343 (6th Cir. 2000), determines the disposition of

---

[3] One Unnamed Plaintiff, Jack P. Cook, is incapacitated and apparently has been unable to be deposed. The Court's discussion with regard to the deceased shareholders applies to Mr. Cook's claims as well.

12

these claims.[4]  In Glassner, the Sixth Circuit affirmed the dismissal pursuant to Rule 12(b)(6) of a claim that a deceased smoker was fraudulently deceived by cigarette advertisements into believing that cigarettes were safe.  The decedent had left no sworn testimony as to her reliance on the tobacco company's statements and omissions.  223 F.3d at 353; see also Glassner v. R.J. Reynolds Tobacco Co., No. 5:99CV0796, 1999 WL 33591006, at *4 (N.D. Ohio June 29, 1999) (underlying district court decision), aff'd 223 F.3d 343 (6th Cir. 2000).  The court found that a jury could not find such reliance without engaging in impermissible speculation as to what the decedent believed and how it affected her decision-making.  223 F.3d at 353.

In this case, the decedent shareholders did not give sworn testimony as to their knowledge of Adtech and Davidson's activities and how they relied on any statements and/or omissions.  Their heirs have indicated that they do not know what their decedents knew with regard to Davidson's misrepresentations and/or omissions.  Additionally, the Class has not pointed to specific evidence that could demonstrate what the decedents knew and relied upon with regard to those through whom Davidson spoke.  The heirs' claims must be dismissed under Glassner because the Class has not pointed to evidence from

---

[4] The Class has not attempted to distinguish Glassner because that case concerned fraud under Ohio common law rather than under Tennessee common law.

13

which a jury could assess other than by speculation what the decedents knew and how it affected their actions.[5]

### 2. Unnamed Plaintiffs Who Received Their Adtech Shares from Davidson

Headwaters asserts that the claims of Unnamed Plaintiffs who received their Adtech shares from Davidson must be dismissed for two reasons: 1) because they are close family and/or friends of the individual who committed the fraud; and 2) under the tainted shares doctrine. With regard to Headwaters's first argument, Headwaters cites to a single case for the proposition that "[c]ourts will not allow close family and friends to reap the benefits of a defrauder's actions." (Headwaters's Mem. 24.) In that case, an individual had engaged in a multi-million-dollar Ponzi scheme, and directed some of the proceeds to a companion who used that money to pay off the mortgage on her condominium. Commodity Futures Trading Comm'n v. Hudgins, 620 F. Supp. 2d 790, 792 (E.D. Tex. 2009). The perpetrator of the fraud's companion was unaware of his fraud. Id. The district court considered whether, under Florida's constitutionally-based homestead exemption, the condominium was subject to an equitable lien and a judicial sale for the benefit of the defrauded investors. Id. at 792-96. The court found that the condominium

---

[5] The Court again rejects the Class's assertion that the first jury decided the individual issue of reliance as to the Unnamed Plaintiffs, including the heirs. (See D.E. 775 at 2.)

was subject to sale under an equitable exception to Florida's homestead exemption.  Id. at 794-95.

Headwaters reasons from Hudgins that Davidson's relatives should likewise be barred from reaping the benefits of their Adtech shares in the event that the Unnamed Plaintiffs are awarded relief based on those shares.  Hudgins does not compel this conclusion because the innocent victims of fraud in Hudgins would benefit from the judicial sale of the condominium.  Were Headwaters to prevail on its argument, Headwaters—a firm that the first jury found engaged in civil conspiracy to defraud the Class—would benefit.  The Court rejects Headwaters's argument based on Hudgins.

Headwaters also argues that the equitable tainted shares doctrine bars the recovery of Davidson's relatives.  Under that doctrine, the recipient of shares is estopped from suing where the transferor of the shares "participated or acquiesced in the wrongdoing.  On this theory, the transferee only receives what the transferor could give, and the transferor could not transfer a right to sue himself."  First Am. Corp. v. Al-Nahyan, 17 F. Supp. 2d 10, 20 (D.D.C. 1998) (citing Nat'l Union Elec. Corp. v. Matsushita Elec. Indus. Co., 498 F. Supp. 991, 996 (E.D. Pa. 1980)).

The parties apparently agree that the tainted shares doctrine applies only where the fraud occurs before the

15

transfer, but they dispute when Davidson's wrongdoing began. The Class asserts that it began after his late-1980s gifts of Adtech shares.  (Class's Resp. 36-37.)  Headwaters points to two statements from closing arguments in the first trial of this matter in which counsel for the Class suggested that Davidson's fraud began earlier.  (Headwaters's Reply Mem. 19.)  Statements by counsel are of course not evidence, but the Court finds that summary judgment under the tainted shares doctrine is inappropriate because there is a dispute of material fact with regard to whether Davison's wrongdoing began prior to his gift of Adtech shares to his family members.  The parties may address the issue when Headwaters presents its other equitable defenses.

### 3. Unnamed Plaintiffs Who Have Declared Bankruptcy

Headwaters argues that the claims of six Unnamed Plaintiffs should be dismissed because they failed to list their Adtech shares and their equitable interests in the '629 Patent in their respective bankruptcy schedules.  "'[W]hen the debtor has failed to disclose an asset in accordance with § 521(1) of the [Bankruptcy] Code and the Trustee has not otherwise administered it, the asset is not, upon the closing of the case, deemed abandoned or administered for purposes of § 350, as it would be if the asset were properly disclosed.'"  In re Cundiff, 227 B.R. 476, 478 (B.A.P. 6th Cir. 1998) (quoting In re Peebles, 224 B.R. 519, 520 (Bankr. D. Mass. 1998)).  Under such circumstances, the

16

unscheduled asset remains property of the bankruptcy estate. Id. at 478-79.

The Court finds it unnecessary to consider Headwaters's argument with regard to this group of Unnamed Plaintiffs' equitable interests in the '629 Patent because Headwater's argument with regard to their Adtech shares is dispositive. It is undisputed that four members of this group did not list their Adtech shares. The schedules from Cassondra Wiese Chrisley's 2004 bankruptcy and Philip H. Sawyer's 1999 bankruptcy do not list their Adtech shares. (See D.E. 791-10 at 9-13, 791-46 at 15-16.) Judy Ann Irvin admitted in her deposition that she did not list her Adtech shares in her 1993 bankruptcy. (D.E. 791-36 at 4.) Bruce Looney made a similar admission with regard to his bankruptcy. (D.E. 791-39 at 5.) The Adtech shares they failed to disclose thus remain part of their respective bankruptcy estates. See In re Cundiff, 227 B.R. at 478-79.

It is undisputed that the two other members of this group filed for bankruptcy, Richard Boynton in 1993 and Charles Denson in 1994 and 1999. (See D.E. 791-24 at 7; D.E. 791-22 at 3-5.) Their Adtech shares became part of their respective bankruptcy estates. See 11 U.S.C. 541(a)(1). The Class has not put forth evidence indicating that Boynton or Denson reacquired these shares. See Univ. of Pittsburgh v. Townsend, 542 F.3d 513, 522 (6th Cir. 2008) ("The moving party may satisfy [its summary

17

judgment] burden by pointing out to the district court that there is no evidence underlying the non-moving party's case." (citing Gen. Motors Corp. v. Lanard Toys, Inc., 468 F.3d 405, 412 (6th Cir. 2006))).

The Court finds that these six Unnamed Plaintiffs do not own Adtech shares. Individuals who do not own Adtech shares are not members of the Class, which is defined as "[a]ll shareholders of the First Adtech, their heirs, successors, and assigns, who did not receive dividends through the Second Adtech." (Order Granting Mot. to Certify Class Pursuant to Rule 23 (D.E. 574) 29.) Cassondra Wiese Chrisley, Philip H. Sawyer, Judy Ann Irvin, Bruce Looney, Richard Boynton, and Charles Denson are therefore excluded from the Class.

### 4. The Pattons

Headwaters contends that the claims of three Unnamed Plaintiffs, Thomas W. Patton, Ida Bishop, and Rosemary Patton (collectively the "Pattons"), should be dismissed because they do not meet the definition of the Class. As noted above, the Class is defined as "[a]ll shareholders of the First Adtech, their heirs, successors, and assigns, who did not receive dividends through the Second Adtech." (D.E. 574 at 29.) The Pattons are heirs of Thomas A. Patton and Ruth Patton. Thomas A. and Ruth jointly owned shares of Adtech, and Ruth also owned Adtech shares individually. According to the Class,

distributions from the Second Adtech were made to the jointly-owned shares, but not to Ruth's individually-owned shares.

Headwaters argues that the Pattons are excluded from the Class because their predecessors in interest, Thomas A. and Ruth, received dividends from the Second Adtech. The Class responds that the Pattons should be considered members of the Class to the extent that their claims are based on Ruth's individually-owned shares. This issue turns on interpretation and possibly revision of the Class definition.[6] The Court declines to decide the issue at the present time. The parties may by motion seek a ruling on the scope of the Class definition, and if no such motion is made the Pattons' claims will be addressed with the other proof-of-membership issues.

## IV. Conclusion

For the foregoing reasons, Headwaters's motion for summary judgment as to the Unnamed Plaintiffs is GRANTED in part and DENIED in part.

IT IS SO ORDERED this 6th day of August, 2010.

/s/ Jon P. McCalla\
JON P. McCALLA\
CHIEF U.S. DISTRICT JUDGE

---

[6] Changing the definition to include former shareholders, as with the non-disclosing Unnamed Plaintiffs, would seem to entail a wholesale reworking at an advanced stage of the litigation. The issue posed by the Pattons' shares would involve a less extensive revision or interpretation. The Court expresses no opinion as to whether such treatment of the definition is appropriate.