```
          IN THE UNITED STATES DISTRICT COURT
         FOR THE WESTERN DISTRICT OF TENNESSEE
                    EASTERN DIVISION
```

| | |
|---|---|
| PHILIP E. BOYNTON et al.,       )<br>                                 )<br>     Plaintiffs,                 )<br>                                 )<br>vs.                              )     No. 1:02-cv-01111-JPM-egb<br>                                 )<br>HEADWATERS, INC., et al.,        )<br>                                 )<br>     Defendants.                 )   | |

**MEMORANDUM OPINION AND ORDER**

The Court held a post-verdict hearing in this case on January 6, 2011. (Docket Entry ("D.E.") 977.) Plaintiffs were represented by Jeffrey Greene, Esq., Gregory Oakley, Esq., and Robert Geringer, Esq. Defendant Headwaters Incorporated ("Headwaters") was represented by Alan Sullivan, Esq., Leo Bearman, Jr., Esq., and James Gardner, Esq. Two issues now remain before the Court: (1) Headwaters' equitable defenses and (2) Plaintiffs' request for a constructive trust. The Court addresses both issues below.

**I. Background**

This case arises from James Gary Davidson's ("Davidson") scheme to defraud investors in an Illinois corporation called

Adtech ("Adtech I").[1]  Davidson invented a coal agglomeration process that was patented ("'629 Patent") in 1993.  Davidson told Adtech I's investors that he had assigned his interest in the '629 Patent to the company, but Davidson knew that Adtech I had been administratively dissolved in 1991 by the Illinois Secretary of State.  Accordingly, Davidson's purported assignment was ineffective.

Undeterred by Adtech I's administrative dissolution, Davidson continued to operate the company as if it still existed.  Adtech I's post-dissolution transactions include (1) the grant of a license in the '629 Patent ("Carbontec License") to Carbontec Energy Corporation in 1996 and (2) the receipt of royalties from the Carbontec License.

Davidson began discussions with Headwaters in 1998 regarding the transfer of Davidson's rights in the '629 Patent and related technologies to Headwaters.  Davidson told Headwaters in the course of negotiations that Adtech I no longer existed.  On May 14, 1998, a second Adtech corporation ("Adtech II") was formed.  Adtech II had one shareholder, Macrotech Corporation ("Macrotech"), which Davidson controlled.  On October 21, 1998, Adtech II transferred its putative rights in the '629 Patent to Davidson.  Shortly afterwards, Davidson executed purchase agreements with Headwaters in which Davidson

---

[1] The relevant facts are largely reproduced from the Court's August 26, 2008 Order Granting Plaintiffs' Motion to Certify Class Pursuant to Rule 23 (D.E. 574).  Accordingly, pinpoint citations are not provided in this section.

transferred his rights in the '629 Patent and the Carbontec License to Headwaters.  Headwaters' then-counsel prepared these purchase agreements.  Headwaters issued 60,000 shares of common stock to Adtech II and Macrotech in exchange for the '629 Patent and the Carbontec License.

Davidson did not disclose the existence of the purchase agreements to Adtech I's investors until May 25, 1999.  Davidson then disclosed Adtech I's administrative dissolution in a letter of resignation dated November 23, 1999.  Plaintiffs filed the instant suit on May 6, 2002.  The Court conducted the first phase of a bifurcated trial in June 2009.  The first jury found, inter alia, that Headwaters engaged in a civil conspiracy to defraud Plaintiffs.  (D.E. 750.)  The Court conducted the trial's second phase in August and September 2010.  The second jury found, inter alia, that several unnamed Plaintiffs reasonably relied on Davidson's misrepresentations and/or omissions.  (D.E. 942.)

## II. Standard of Review

Because Plaintiffs seek equitable relief, the juries' damages calculations are advisory.  (See Oct. 5, 2009 Order Following Hr'g (D.E. 775) 2 (citing Hyde Props. V. McCoy, 507 F.2d 301, 306 (6th Cir. 1974)).)  Accordingly, it is up to the Court to determine the proper measure of relief.

3

**III. Analysis**

    **a. Headwaters' Equitable Defenses**

Headwaters asserts several equitable defenses. (See Def.'s Mem. on Equitable Issues ("Def.'s Br.") (D.E. 954) 14-22; see also Def.'s Mem. in Resp. to Pls.' Mem. on Equitable Issues ("Def.'s Resp.") (D.E. 972) 37-46.) The Court addresses Headwaters' defenses below.

    **1. 35 U.S.C. § 262**

Headwaters contends that Plaintiffs' claims are barred by 35 U.S.C. § 262. It argues that Davidson, as a co-owner of the '629 Patent, had a statutory right[2] to license and sell the '629 Patent "without the consent of the members of the class and without accounting to them." (Def.'s Br. 15.) The Court has rejected this argument before. (See, e.g., Aug. 6, 2010 Order Granting in Part and Den. In Part Headwaters' Mot. for Summ. J. as to All Unnamed Members of Pl. Class ("Aug. 6, 2010 Order") (D.E. 856) 7.) Headwaters has not cited any controlling authority for the proposition that 35 U.S.C. § 262 permits fraud by a patent's co-owner. Accordingly, the Court declines to revisit its prior conclusion as to this issue.

---

[2] Pursuant to 35 U.S.C. § 262, and absent any agreement to the contrary, a patent co-owner "may freely use the patented technology without regard to the other[s]." Wisconsin Alumni Res. Foundation v. Xenon Pharms., Inc., 591 F.3d 876, 882 (7th Cir. 2010) (citing 35 U.S.C. § 262).

4

### 2. Bona Fide Purchaser

Headwaters contends that it is a bona fide purchaser of the '629 Patent and the Carbontec License. Headwaters asserts that it paid fair value for the '629 Patent and the Carbontec License from "the legal title holder [i.e., Davidson]." (Def.'s Br. 16-17.) Under Tennessee law, a bona fide purchaser is "one who buys something for value without notice of another's claim to the item or of any defects in the seller's title; one who has in good faith paid valuable consideration for property . . . ." Estate of Darnell v. Fenn, 303 S.W.3d 269, 279 (Tenn. Ct. App. 2009) (internal quotations omitted). The 2009 jury found that Headwaters engaged in a civil conspiracy to defraud Plaintiffs. (2009 Jury Verdict Form (D.E. 750) 3.) Headwaters offers no authority for the proposition that civil conspiracy liability and good faith can coexist. Accordingly, the Court rejects Headwaters' bona fide purchaser defense.

### 3. Laches

Headwaters contends that Plaintiffs' claims are barred by laches. It argues that many Plaintiffs knew by the early 1990s that Davidson "controlled Adtech's assets as his own and . . . regularly misappropriated [Adtech's] money for his personal use." (Def.'s Br. 18.) Headwaters alleges that (1) Plaintiffs unreasonably delayed in asserting their rights to the '629

5

Patent and the Carbontec License, and (2) this delay resulted in prejudice to Headwaters. (Id. at 19.)

Plaintiffs respond that Headwaters has mischaracterized the doctrine of laches. (Pls.' Mem. on Equitable Issues ("Pls.' Br.") (D.E. 965) 41-42.) The Court agrees. Under Tennessee law, laches applies only where no statute of limitations governs. Brinton v. Brinton, No. M2009-02215-COA-R3-CV, 2010 WL 2025473, at *5 (Tenn. Ct. App. Apr. 16, 2010) (citing Clark v. Am. Nat'l Bank & Trust Co., 531 S.W.2d 563, 572 (Tenn. Ct. App. 1974)). Where a statute of limitations governs, gross laches applies instead. Id. The elements of gross laches are: "(1) unreasonable and inexcusable delay in filing the action; (2) loss of evidence; *and* (3) prejudice to the defendant." Id. (emphasis added).

A three-year statute of limitations applies in this case. Tenn. Code Ann. § 28-3-105. The Court, therefore, analyzes Headwaters' argument using the elements of gross laches. See Brinton, 2010 WL 2025473, at *5 (listing the elements). Headwaters does not argue that any evidence has been lost. (See generally Def.'s Br. 18-19; see also Def.'s Resp. 40-42.) Because the test for gross laches is conjunctive, Headwaters cannot show that Plaintiffs are guilty of gross laches. Accordingly, the Court rejects Headwaters' laches defense.

6

### 4. Acquiescence

Headwaters contends that Plaintiffs' claims are barred by acquiescence. It argues that "key class members" knew by the early 1990s that Davidson had been convicted of fraud and had misappropriated certain assets. (Def.'s Br. 20.) Headwaters alleges that these key class members "acquiesced to Davidson's complete control over Adtech and its assets." (Id.)

Acquiescence is an intentional failure to protect one's rights. Elvis Presley Enters., Inc. v. Elvisly Yours, Inc., 936 F.2d 889, 894 (6th Cir. 1991); see also Johnny's Fine Foods, Inc. v. Johnny's Inc., 286 F. Supp. 2d 876, 882 n.5 (M.D. Tenn. 2003) (noting that acquiescence requires some "affirmative assurance to the defendant"). "[N]o estoppel arises by acquiescence in acts other than . . . the acts which the party claiming the estoppel alleges that he is entitled to commit by [acquiescence] . . . ." Moss v. Aetna Life Ins. Co., 73 F.2d 339, 341 (6th Cir. 1934). In order to prevail on its acquiescence defense, Headwaters must show that Plaintiffs acquiesced in the 1998 transactions between Davidson and Headwaters. Headwaters' argument, however, is directed toward certain Plaintiffs' actions (or lack thereof) in the early 1990s. Headwaters offers no evidence that Plaintiffs acquiesced in the 1998 transactions. Accordingly, the Court rejects Headwaters' acquiescence defense.

### 5. Unclean Hands

Headwaters contends that Plaintiffs' claims are barred by the doctrine of unclean hands. Headwaters argues that the evidence at trial demonstrates that Plaintiffs knew or should have known that Davidson had been convicted of fraud and had misappropriated certain assets. (Def.'s Br. 21.) Headwaters asserts that Plaintiffs' failure "to stop Davidson, to take control of Adtech, to take control of the '629 Patent, or to record their interest[s]" amounts to inequitable conduct. (Id.)

Unclean hands requires some fraudulent, illegal, or unconscionable conduct by the party against whom the defense is asserted. Nolen v. Witherspoon, 187 S.W.2d 14, 16 (Tenn. 1945). The conduct complained of must (1) relate directly to the transaction at issue and (2) result in prejudice to the defendant. Id. Headwaters' argument, however, focuses on certain Plaintiffs' actions (or lack thereof) in the early 1990s. Headwaters offers no evidence that Plaintiffs engaged in any fraudulent, illegal, or unconscionable conduct with respect to the 1998 transactions. Accordingly, the Court rejects Headwaters' unclean hands defense.

### 6. Actual or Apparent Authority

Headwaters contends that Plaintiffs' "acquiescence" gave Davidson "the actual or implied authority" to sell the '629 Patent and the Carbontec License to Headwaters. (Def.'s Br.

8

22.) Headwaters' actual or apparent authority defense, therefore, rises or falls with its acquiescence defense. The Court has already rejected Headwaters' acquiescence defense. Accordingly, the Court rejects Headwaters' actual or apparent authority defense.

### 7. In Pari Delicto

Headwaters contends that Plaintiffs' claims are barred by the doctrine of *in pari delicto*. Headwaters argues that Plaintiffs "claim[] that [they] are entitled to recover from Headwaters based on Davidson/Macrotech's share ownership."[3] (Def.'s Br. 22.) The *in pari delicto* defense "is rooted in the common-law notion that a plaintiff's recovery may be barred by his own wrongful conduct." Pinter v. Dahl, 486 U.S. 622, 632 (1988); see also id. at 636 (noting that "[t]he plaintiff must be an active, voluntary participant in the unlawful activity that is the subject of the suit"). Headwaters offers no evidence that Plaintiffs participated in the civil conspiracy between Davidson and Headwaters. Accordingly, the Court rejects Headwaters' *in pari delicto* defense.

### 8. Lack of Equitable Interest

Headwaters contends that Plaintiffs have failed to prove any equitable interest in the '629 Patent and the Carbontec License. The Court has rejected this argument numerous times.

---

[3] Plaintiffs have consistently asserted the opposite, namely, that the Macrotech shares are invalid. (Unnamed Class Pls.' Renewed Mot. for J. as a Matter of Law (D.E. 948).)

9

(See, e.g., Aug. 6, 2010 Order 5 ("The Court determined in 2008 that there is sufficient evidence from which the Class . . . could demonstrate an equitable interest in the '629 Patent.").) Headwaters' argument amounts to another request for reconsideration. Headwaters does not argue that (1) the controlling law has changed; (2) new evidence has emerged; or (3) the Court has committed a clear error. See Rodriguez v. Tenn. Laborers Health & Welfare Fund, 89 F. App'x 949, 959 (6th Cir. 2004) (outlining the standard for motions for reconsideration). Accordingly, the Court declines to revisit its prior conclusion as to this issue.

### b. Constructive Trust

Plaintiffs ask the Court to impose a constructive trust. (Pls.' Br. 6.) Plaintiffs contend that the constructive trust should include "every penny that Headwaters received as payment of royalties from Carbontec . . . ."[4] (Id. at 28.) Plaintiffs argue that all class members—-including those whose claims have been dismissed—-should benefit from the trust.[5] (Id. at 31.) Plaintiffs also ask the Court to award prejudgment interest. (Id. at 34.)

---

[4] Headwaters received $43,986,389.00 in royalties from Carbontec. (2010 Trial Ex. 140.)
[5] The Court rejects this argument. A constructive trust is a remedy, not an independent cause of action. See Am. Universal Ins. Co. v. Pugh, 821 F.2d 1352, 1356 (9th Cir. 1987) (explaining that a constructive trust "is purely an equitable remedy"); see also Stinnett v. Goans, No. 03A01-9502-CH-00073, 1995 Tenn. App. LEXIS 699, at *10 (Tenn. Ct. App. Oct. 31, 1995) (discussing the remedy). Plaintiffs whose claims were dismissed did not prevail on their underlying claims. Accordingly, they are not entitled to any remedy.

10

Headwaters counters that a constructive trust is inappropriate because Plaintiffs' legal remedy is adequate. (Def.'s Br. 7.)  It argues that the imposition of a constructive trust would violate the Seventh Amendment.[6]  (Id. at 8.) Headwaters also opposes Plaintiffs' request for prejudgment interest.  (Def.'s Resp. 30.)  The Court addresses the parties' arguments below.

### 1. Adequacy of Legal Remedy

A constructive trust is an equitable remedy that may be imposed where a defendant:

> (1) obtains legal title to property in violation of some duty owed [to] the owner of the property; (2) obtains title to property by fraud, duress, or other inequitable means; (3) makes use of a confidential relationship or undue influence to obtain title to property upon more advantageous terms than would otherwise have been obtained; or (4) obtains property with notice that someone else is entitled to the property's benefits.

Stewart v. Sewell, 215 S.W.3d 815, 826 (Tenn. 2007) (citing Tanner v. Tanner, 698 S.W.2d 342, 345-46 (Tenn. 1985)).  A fiduciary or confidential relationship is not a prerequisite to the imposition of a constructive trust.  See Robert Banks, Jr., A Survey of the Constructive Trust in Tennessee, 12 Mem. St. U. L. Rev. 71, 104 (1981-82) (collecting Tennessee cases). Moreover, the Court "is bound by no unyielding formula" in

---

[6] The Court rejects this argument.  The juries' awards are advisory.  (See Oct. 5, 2009 Order Following Hr'g 2 ("[T]he jury's damages calculations are not binding on this Court.").)  Accordingly, the Court may in its discretion impose a constructive trust because doing so would be consistent with the 2009 jury's finding that Headwaters engaged in a civil conspiracy.

11

deciding whether to impose a constructive trust. Holt v. Holt, 995 S.W.2d 68, 71 (Tenn. 1999) (quoting Beatty v. Guggenheim Exploration Co., 122 N.E. 378, 380-81 (1919) (Cardozo, J.)); see also Holt, 995 S.W.2d at 71 (explaining that "[t]he equity of the transaction . . . shapes[s] the measure of relief").

Despite the broad language above, the Court is bound by the jury's conclusions as to legal issues, insofar as they affect the imposition of a constructive trust. In re Lewis, 845 F.2d 624, 629-30 (6th Cir. 1988) (citing Kitchen v. Chippewa Valley Schs., 825 F.2d 1004, 1014 (6th Cir. 1987)). A constructive trust is most appropriate where (1) the property in question is unique; (2) the property in question is difficult to value; or (3) the defendant is insolvent. United States v. Andrews, 530 F.3d 1232, 1237 (10th Cir. 2008) (citing Restatement (Third) of Restitution and Unjust Enrichment § 55(1)-(2) (2008)). If a plaintiff seeks "a sum of money equal to the defendant's profit[s]," then money damages, and not a constructive trust, are sufficient. Williams Elecs. Games, Inc. v. Garrity, 366 F.3d 569, 577 (7th Cir. 2004); see also Dairy Queen, Inc. v. Wood, 369 U.S. 469, 478 (1962) ("The necessary prerequisite to [an equitable remedy] is . . . the absence of an adequate remedy at law.").[7]

---

[7] But see Banks, 12 Mem. St. U. L. Rev. at 110 ("[T]here does not appear to be any Tennessee authority directly facing the question of the adequacy of a legal remedy as a bar to the constructive trust.").

Plaintiffs devote twenty-one pages of their brief to attacking Headwaters' conduct in defending the instant suit. (See, e.g., Pls.' Br. 5 (calling Headwaters' defense "aggressive and dishonest").) Plaintiffs contend that Headwaters' litigation tactics are relevant to the question of whether to impose a constructive trust. (Id. at 6.) The Court disagrees. The relevant conduct is the civil conspiracy between Davidson and Headwaters, not Headwaters' actions in defending this suit.[8]

Plaintiffs' argument that Headwaters should not be permitted to retain any of the Carbontec royalties is a powerful one. The Court is mindful of the equitable principle that a "wrongdoer should disgorge his fraudulent enrichment." Mattel v. MGA Entm't, Inc., 616 F.3d 904, 910 (9th Cir. 2010) (quoting Janigan v. Taylor, 344 F.2d 781, 786 (1st Cir. 1965) (internal quotations omitted)). Nevertheless, Plaintiffs should not receive a windfall. Mattel, 616 F.3d at 910 (stating that the Court should "identify the profits and recapture them without capturing the fruits of the defendant's own labors or legitimate efforts") (quoting Dan B. Dobbs, Dobbs Law of Remedies: Damages-Equity-Restitution § 6.6(3) (2d ed. 1993) (internal quotations omitted)).

Headwaters offered evidence at trial that its own efforts helped make the '629 Patent and the Carbontec License

---

[8] The Court notes that it declined to impose sanctions against Headwaters for alleged misconduct during discovery. (Aug. 23, 2005 Order Den. Pls.' Mot. for Sanctions (D.E. 377).)

13

successful.  For example, Kenneth Frailey testified that when Headwaters' team visited the Carbontronics plants in 1998 and 1999, the team identified several problems related to the plants' operations.  (Trial Test. of Kenneth Frailey ("Frailey Test.") 1772.)  From 1999 to 2005, Headwaters' team worked to solve problems related to: (1) plant productivity; (2) forming equipment; (3) feedstock variability; (4) feedstock moisture variability; (5) uneven distribution of the reagent; and (6) measurements of chemical change.  (Id. at 1768-79.)  Brent Cook ("Cook") testified that he met with Department of Treasury officials, the Internal Revenue Service ("IRS"), and United States Senate subcommittees to secure the approval of the reagent for the '629 Patent.  (Test. of Brent Cook ("Cook Test.") 1154-55.)  Without the IRS's approval of the reagent, the plants would not have qualified for Section 29 tax credits.  (Id. at 1155.)  Cook testified that the tax credits were integral to the economic viability of the operation.  (Id.)

Plaintiffs respond that the Court should not credit Headwaters' efforts because the efforts are not "unique and special."  (Pls.' Br. 36.)  There is no requirement, however, that a defendant's efforts be unique or special.  The Ninth Circuit has cautioned that a constructive trust may "go[] too far" where a defendant has added value through its own "hard work and creativity."  Mattel, 616 F.3d at 911.  This is the

14

case here.  Headwaters' hard work and legitimate efforts helped to make the '629 Patent and the Carbontec License profitable.

Plaintiffs asked both juries to award the entire amount of royalties as damages.  (See 2009 Trial Tr. 2089 ("[W]e're asking you to give the entire class of shareholders . . . the amount of royalties that were received by Headwaters from Carbontec, and that's $43,726,398.58."); see also 2010 Trial Tr. 1791 ("[I]f you look at the total amount that was collected by Headwaters, it adds up to $44 million.").)  Both juries, acting in an advisory capacity, declined to do so.  (See 2009 Jury Verdict Form; 2010 Special Jury Verdict Form (D.E. 942).)  Their verdicts, while not binding on this Court, are well-considered.  Headwaters should not be forced to disgorge profits attributable to its own legitimate efforts.  See Mattel, 616 F.3d at 911 ("The district court's imposition of a constructive trust forcing [defendant] to hand over its sweat equity . . . must be vacated.").  Accordingly, the Court ADOPTS the juries' awards.  Plaintiffs are entitled to $16,011,771.00 in damages.

### 2. Prejudgment Interest

Plaintiffs ask the Court to award prejudgment interest. (Pls.' Br. 35.)  Headwaters opposes Plaintiffs' request. (Def.'s Resp. 29.)  The Court is "guided by principles of equity" in deciding whether to award prejudgment interest. Franklin Capital Assocs., L.P. v. Almost Family, Inc., 194

15

S.W.3d 392, 405 (Tenn. Ct. App. 2005) (citing Myint v. Allstate Ins. Co., 970 S.W.2d 920, 927 (Tenn. 1998)).  The Court should consider the following factors: (1) whether the amount of the obligation is certain; (2) whether the amount of the obligation is disputed on reasonable grounds; and (3) whether the existence of the obligation is disputed on reasonable grounds.  Franklin Capital Assocs., 194 S.W.3d at 405-06 (citing Mitchell v. Mitchell, 876 S.W.2d 830, 832 (Tenn. 1994)).  Here, the amount of the obligation is disputed on reasonable grounds.  Headwaters offered evidence at trial that a signification portion of the Carbontec royalties resulted from its own contributions.  (See generally Frailey Test; Cook Test.)  Accordingly, the Court declines to award prejudgment interest.

**IV. Conclusion**

For the foregoing reasons, the Court REJECTS Headwaters' equitable defenses and AWARDS Plaintiffs damages in the amount of $16,011,771.00.

IT IS SO ORDERED this 11th day of April, 2011.

                                          __/s/ Jon P. McCalla_____
                                          JON P. McCALLA
                                          CHIEF U.S. DISTRICT JUDGE